| STATE OF NORTH CAROLINA | File No. 20 CVS 401 |
|---|---|
| HALIFAX County | In The General Court Of Justice ☐ District ☒ Superior Court Division |

**FILED** 2020 JUN 15 P 3:03 HALIFAX CO., C.S.C. BY ____ VK

**Name And Address Of Plaintiff 1**
HALIFAX REGIONAL MEDICAL CENTER
d/b/a VIDANT NORTH HOSPITAL

**Name And Address Of Plaintiff 2**

## GENERAL CIVIL ACTION COVER SHEET
☒ INITIAL FILING  ☐ SUBSEQUENT FILING

Rule 5(b), General Rules of Practice For Superior and District Courts

**Name And Address Of Attorney Or Party, If Not Represented** (complete for initial appearance or change of address)
K&L Gates LLP
By: Gary S. Qualls/Susan K. Hackney/Steven G. Pine
430 Davis Drive, Suite 400
Morrisville, NC 27560

| Telephone No. 919-466-1188 | Cellular Telephone No. |
|---|---|
| NC Attorney Bar No. 16798/32252/44705 | Attorney E-Mail Address steven.pines@klgates.com |

☒ Initial Appearance in Case    ☐ Change of Address

**VERSUS**

**Name Of Defendant 1**
UNITEDHEALTHCARE OF NORTH CAROLINA, INC.

Summons Submitted  ☒ Yes ☐ No

**Name Of Defendant 2**
UNITEDHEALTHCARE, INC.

Summons Submitted  ☒ Yes ☐ No

**Name Of Firm** K&L Gates LLP
**FAX No.** 919-516-2072
**Counsel for** ☒ All Plaintiffs ☐ All Defendants ☐ Only (list party(ies) represented)

☒ Jury Demanded In Pleading
☐ Complex Litigation

☐ Amount in controversy does not exceed $15,000
☐ Stipulate to arbitration

## TYPE OF PLEADING

(check all that apply)
- ☐ Amend (AMND)
- ☐ Amended Answer/Reply (AMND-Response)
- ☐ Amended Complaint (AMND)
- ☐ Assess Costs (COST)
- ☐ Answer/Reply (ANSW-Response) (see Note)
- ☐ Change Venue (CHVN)
- ☒ Complaint (COMP)
- ☐ Confession Of Judgment (CNJF)
- ☐ Consent Order (CONS)
- ☐ Consolidate (CNSL)
- ☐ Contempt (CNTP)
- ☐ Continue (CNTN)
- ☐ Compel (CMPL)
- ☐ Counterclaim (CTCL) *Assess Court Costs*
- ☐ Crossclaim (list on back) (CRSS) *Assess Court Costs*
- ☐ Dismiss (DISM) *Assess Court Costs*
- ☐ Exempt/Waive Mediation (EXMD)
- ☐ Extend Statute Of Limitations, Rule 9 (ESOL)
- ☐ Extend Time For Complaint (EXCO)
- ☐ Failure To Join Necessary Party (FJNP)

(check all that apply)
- ☐ Failure To State A Claim (FASC)
- ☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
- ☐ Improper Venue/Division (IMVN)
- ☐ Including Attorney's Fees (ATTY)
- ☐ Intervene (INTR)
- ☐ Interplead (OTHR)
- ☐ Lack Of Jurisdiction (Person) (LJPN)
- ☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
- ☐ Modification Of Child Support In IV-D Actions (MSUP)
- ☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
- ☐ Petition To Sue As Indigent (OTHR)
- ☐ Rule 12 Motion In Lieu Of Answer (MDLA)
- ☐ Sanctions (SANC)
- ☐ Set Aside (OTHR)
- ☐ Show Cause (SHOW)
- ☐ Transfer (TRFR)
- ☐ Third Party Complaint (list Third Party Defendants on back) (TPCL)
- ☐ Vacate/Modify Judgment (VCMD)
- ☐ Withdraw As Counsel (WDCN)
- ☐ Other (specify and list each separately)

**NOTE:** All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must either include a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.

AOC-CV-751, Rev. 1/14
© 2014 Administrative Office of the Courts  (Over)

| | CLAIMS FOR RELIEF | |
|---|---|---|
| ☐ Administrative Appeal (ADMA) | ☐ Limited Driving Privilege - Out-Of-State Convictions (PLDP) | ☐ Product Liability (PROD) |
| ☐ Appointment Of Receiver (APRC) | ☐ Medical Malpractice (MDML) | ☐ Real Property (RLPR) |
| ☐ Attachment/Garnishment (ATTC) | ☐ Minor Settlement (MSTL) | ☐ Specific Performance (SPPR) |
| ☐ Claim And Delivery (CLMD) | ☒ Money Owed (MNYO) | ☒ Other *(specify and list each separately)* |
| ☐ Collection On Account (ACCT) | ☐ Negligence - Motor Vehicle (MVNG) | Declaratory Judgment |
| ☐ Condemnation (CNDM) | ☐ Negligence - Other (NEGO) | Breach of Fiduciary Duty |
| ☐ Contract (CNTR) | ☐ Motor Vehicle Lien G.S. 44A (MVLN) | Breach of Duty of Good Faith and Fair Dealing |
| ☐ Discovery Scheduling Order (DSCH) | ☐ Possession Of Personal Property (POPP) | Unjust Enrichment/Quantum Meruit |
| ☐ Injunction (INJU) | | \ |

Date: 6/12/20

Signature Of Attorney/Party: [signed]

### FEES IN G.S. 7A-308 APPLY
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

### PRO HAC VICE FEES APPLY
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
| | |
| | |
| | |
| | |

| No. | ☐ Additional Defendant(s)     ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

*Defendant(s) Against Whom Crossclaim Asserted*

AOC-CV-751, Side Two, Rev. 1/14
© 2014 Administrative Office of the Courts

| | |
|---|---|
| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| HALIFAX COUNTY | 20 CVS ⟨?⟩ |

FILED 2020 JUN 15 P 3: 04 HALIFAX CO., C.S.C. BY ___

| | |
|---|---|
| HALIFAX REGIONAL MEDICAL CENTER, INC. d/b/a VIDANT NORTH HOSPITAL | |
| Plaintiff, | |
| v. | COMPLAINT |
| | Jury Trial Demanded |
| UNITEDHEALTHCARE OF NORTH CAROLINA, INC.; UNITEDHEALTHCARE, INC. | |
| Defendants. | |

Plaintiff, Halifax Regional Medical Center, Inc. d/b/a Vidant North Hospital ("Vidant North" or "Plaintiff") files this Complaint against Defendants UnitedHealthCare of North Carolina, Inc. and UnitedHealthCare, Inc. (collectively, "United" or "Defendants") and alleges as follows:

## THE PARTIES

1. Plaintiff Vidant North owns and operates a 204-bed not-for-profit hospital located in Roanoke Rapids, Halifax County, North Carolina. On June 1, 2019, Vidant North, formerly known as Halifax Regional Medical Center, merged with Vidant Health, a 1,447-bed, nine-hospital regional health system headquartered in Greenville, Pitt County, North Carolina.

2. Defendant UnitedHealthcare of North Carolina, Inc. is organized under the laws of North Carolina, with its principal place of business in Greensboro, North Carolina.

3. Upon information and belief, Defendant UnitedHealthCare, Inc. is organized under the laws of Delaware, with its principal place of business in Minnetonka, Minnesota.

1

4. United provides healthcare insurance, administration, and / or benefits to policyholders or plan participants pursuant to a variety of healthcare benefit plans and policies of insurance, including employer-sponsored benefit plans, government-sponsored benefit plans, Medicare Advantage plans, and individual health benefit plans. United is part of UnitedHealth Group, a publically traded company. Based on UnitedHealth Group's most recent quarterly report, for the quarter ending March 31, 2020, United Healthcare Insurance Company earned $51.1 billion in revenues and $2.9 billion in net earnings through its health insurance operations.[1]

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action and over the parties.

6. The Superior Court Division has jurisdiction because Vidant North's claims exceed $25,000.

7. Plaintiff Vidant North operates and has its principal place of business in Halifax County.

8. Venue is proper in Halifax County Superior Court.

9. Defendants are subject to this Court's specific jurisdiction because the causes of action herein arise directly from Defendants' purposeful contacts relating to Vidant North in Halifax County and in North Carolina.

10. Defendants are subject to this Court's general personal jurisdiction because they are constructively "at home" as a result of continuous and systematic contacts in this State and in Halifax County.

---

[1] https://www.unitedhealthgroup.com/viewer.html?file=%2Fcontent%2Fdam%2FUHG%2FPDF%2Finvestors%2F2020%2FUNH-Q1-2020-Release.pdf

Case 4:20-cv-00142-D   Document 1-1   Filed 07/22/20   Page 4 of 19

11. Defendants maintain a North Carolina registered agent for service of process.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

**United's Underpayments to Vidant North for Services Provided in Connection with United Medicare Advantage Plans**

12. United owes Vidant for underpayments under the Medicare Advantage ("MA") program dating back to 2017.

13. United has contracted with the Centers for Medicare and Medicaid Services ("CMS"), whereby United serves as a Medicare Advantage Organization ("MAO") and offers Medicare Advantage coverage to Medicare beneficiaries through a variety of Medicare Advantage plan offerings ("MA Plans"). Individuals that are eligible for original Medicare may elect to instead enroll in an MA Plan offered by a private organization, such as United.

14. Patients treated at Vidant North include Medicare beneficiaries that have enrolled in one of several United Medicare Advantage Plans ("United MA Enrollees" or "Enrollees").

15. MAOs like United can enter into voluntary contracts with health care providers to establish negotiated terms and rates under which the MAOs reimburse such "In-Network" providers for covered health care services provided to Enrollees ("MA Provider Agreements").

16. No MA Provider Agreement was in place between Vidant North and United with respect to the claims at issue that have been underpaid by United since 2017. Instead, Vidant North was "Out-of-Network" with respect to United MA Plans and United MA Enrollees.

17. This action stems from a payment dispute between United and Vidant North as to the amount of payment Vidant North is entitled to as an Out-of-Network provider under the Medicare program rules and / or United's MAO contract with CMS. There is no dispute as to whether the services provided were covered by Medicare; indeed, United paid a portion of the

claims at issue. The dispute is simply over the amount of payment that is owed to Vidant North for those claims.

### United's Obligation to Reimburse Vidant North at Original Medicare Payment Rates, Including Paying 65 Percent of Vidant North's Allowable Bad Debt.

18. MAOs are required under the Social Security Act and by the terms of their MAO contracts with CMS to reimburse Out-of-Network providers for Medicare Part A (inpatient) and Medicare Part B (outpatient) covered services provided to MA-Enrollees at an amount **no less** than the equivalent amount due under **original Medicare**.[2]

19. Part of the payment that providers are eligible for under original Medicare is payment for a provider's "allowable bad debt."

20. Bad debt is defined by CMS as that portion of a provider's claims arising from the furnishing of Medicare-covered health care services that CMS considers to be otherwise uncollectable. 42 C.F.R. 413.89(b). In practice, a frequent source of bad debt is when a Medicare beneficiary is unable to, or is not required to, pay co-insurance, co-payments, or other cost-sharing amounts (collectively, the "Enrollee Cost Share") due for a Medicare covered service.

21. A principle of the Medicare program is that the cost of providing covered services to Medicare beneficiaries cannot be shifted by the government to other patients in need of health care services that are not Medicare beneficiaries. As set forth in CMS rules, uncollectable Enrollee Cost Share that meets the parameters to be considered allowable bad debt is reimbursed under original Medicare:

---

[2] https://www.cms.gov/Medicare/Health-Plans/HealthPlansGenInfo/providerpaymentdisputeresolution ("Medicare Advantage organizations, Cost plans, and PACE organizations are required to reimburse non-contract providers for Part A and Part B services provided to Medicare beneficiaries with an amount that is no less than the amount that would be paid under original Medicare.").

4

306289627.1

> Under Medicare, costs of covered services furnished beneficiaries are not to be borne by individuals not covered by the Medicare program, and conversely, costs of services provided for other than beneficiaries are not to be borne by the Medicare program. Uncollected revenue related to services furnished to beneficiaries of the program generally means the provider has not recovered the cost of services covered by that revenue. The failure of beneficiaries to pay the deductible and coinsurance amounts could result in the related costs of covered services being borne by other than Medicare beneficiaries. **To assure that such covered service costs are not borne by others, the costs attributable to the deductible and coinsurance amounts that remain unpaid are added to the Medicare share of allowable costs.**[3]

22. Accordingly, Medicare established a regulatory framework for payment of bad debt. The criteria for bad debt to be "allowable" and reimbursable is set forth at 42 C.F.R. 413.89(e). To qualify as allowable bad debt, unpaid Enrollee Cost Share must meet the following criteria:

   a. The debt must be related to covered services and derived from deductible and coinsurance amounts.

   b. The provider must be able to establish that reasonable collection efforts were made.

   c. The debt was actually uncollectable when claimed as worthless.

   d. Sound business judgment established that there was no likelihood of recovery at any time in the future.

23. CMS does not pay providers 100 percent of allowable bad debt. Instead, CMS applies a limitation to its payment of allowable bad debt, such that shouldering the burden for unpaid Enrollee Cost Share is divided between CMS and providers. Since 2012, CMS has reduced the amount of allowable bad debt that is paid to hospital providers by 35 percent. See

---

[3] 42 C.F.R. 413.89(d).

5

42 C.F.R. 413.89(h)(1)(v). Thus, under original Medicare, hospital providers, including Vidant North, receive a payment from CMS equal to 65 percent of allowable bad debt.

24. Since allowable bad debt is reimbursed under original Medicare as part of the total Medicare payment, United is obligated to reimburse Out-Of-Network providers, including Vidant North, for allowable bad debt in the same fashion that it is paid under original Medicare.

25. However, United has failed to pay Vidant North for **any** of its allowable bad debt. Since 2017, Vidant North has incurred $1,235,293 in allowable bad debt related to United MA Enrollees.

26. However, since 2017, United has been improperly discounting payment to Vidant North and improperly paying Vidant North below the original Medicare rate for Medicare Advantage Enrollees by failing to make any payment for Vidant North's allowable bad debts.

### United has Also Underpaid Vidant North for Covered Services Provided to Enrollees in United Dual-Special Needs Plans.

27. Some Medicare beneficiaries are also eligible for Medicaid coverage by virtue of also meeting Medicaid eligibility requirements. Such individuals, who can be enrolled in both Medicare and Medicaid, are commonly referred to as "Dual Eligible Beneficiaries."

28. Many Dual Eligible Beneficiaries are excused under CMS rules from needing to pay some or all of their Enrollee Cost Share. For example, Dual Eligible Beneficiaries meeting certain income and resource qualifications are eligible for Medicare Savings Programs, such as the Qualified Medicare Beneficiary Program, which help pay for the Medicare Enrollee Cost Share.[4] Thus, instead of collecting the Enrollee Cost Share from such beneficiaries, providers can submit claims to the applicable state Medicaid program to collect that portion of the

---

[4] https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/downloads/Medicare_Beneficiaries_Dual_Eligibles_At_a_Glance.pdf

Medicare payment. 42 U.S.C. 1396a(n); see also https://www.cms.gov/Outreach-and-Education/Outreach/NPC/Downloads/2018-06-06-QMB-Call-FAQs.pdf.

29. In certain circumstances, however, CMS rules permit state Medicaid programs to refuse to pay some or all of the Enrollee Cost Share. Reimbursement under Medicaid for covered services is often less than reimbursement under original Medicare. Under Federal law, States can set up their Medicaid "State Plan" to limit their payments of Enrollee Cost Share when the Medicare payment (**less** the Enrollee Cost Share) exceeds the allowable **Medicaid** payment amount. 42 U.S.C. § 1396a(n)(1).

30. For example, for a hypothetical covered service, suppose the Medicare payment is $1,000, where the Medicaid payment for the same service is only $500. If the Enrollee Cost Share for the Medicare covered service is $200, the Medicare payment less the Enrollee Cost Share would be $800. Since $800 exceeds the $500 amount that would be paid under Medicaid, a State can enact Medicaid State Plan provisions such that the Medicaid program does not pay any portion of the $200 Enrollee Cost Share.

31. Where the Enrollee Cost Share responsibility has been directed to a State Medicaid program, providers are prohibited by law from collecting the Enrollee Cost Share directly from the Dual Eligible Beneficiary. 42 U.S.C. § 1396a(n)(3); 42 U.S.C. § 1395cc(a)(1)(A).

32. However, when a State refuses to pay some or all of the Enrollee Cost Share, the remaining unpaid Enrollee Cost Share can qualify as allowable bad debt and paid at the 65 percent rate. See CMS Provider Reimbursement Manual, Chapter 15–1, § 322:

> In some instances, the State has an obligation to pay [deductible and coinsurance amounts], but either does not pay anything or pays only part of the deductible or coinsurance because of a State

payment "ceiling." ... **In these situations, any portion of the deductible or coinsurance that the State does not pay that remains unpaid by the patient, can be included as a bad debt under Medicare**...

33. In 2003, Congress authorized Medicare Advantage Special Needs Plans ("SNPs"), where enrollment is restricted to Medicare beneficiaries with specific demographic or disease-state characteristics.[5] One category of SNPs is Dual Eligible Special Needs Plans ("D-SNPs"). D-SNPs are Medicare Advantage Plans that enroll only Medicare Dual-Eligible Beneficiaries.

34. United offers various D-SNPs to Dual Eligible Beneficiaries, including patients that are treated at Vidant North.

35. Like with Enrollees in standard United MA Plans, when Vidant North submits a claim to United for covered health care services provided to United D-SNP Enrollees, United subtracts the Enrollee Cost Share from the initial payment it makes to Vidant North.

36. In North Carolina, the state Medicaid program is operated by the Division of Health Benefits ("DHB"), a division of the North Carolina Department of Health and Human Services.

37. As with Dual Eligible Beneficiaries under original Medicare, Vidant North submits a claim for reimbursement with the North Carolina DHB to obtain payment for the United D-SNP Enrollee Cost Share that has gone unpaid by United.

38. Under the North Carolina Medicaid State Plan, DHB will not pay Enrollee Cost Share when the Medicare payment received by an Out-Of-Network provider, less Enrollee Cost

---

[5] Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. 108-173, §231.

8

Share, exceeds the Medicaid payment.[6] Unpaid Enrollee Cost Share for United D-SNP Enrollees (that is further unpaid by DHB) therefore becomes allowable bad debt.

39. Since allowable bad debt is part of the Medicare payment under original Medicare, United is required to pay Vidant North for this allowable bad debt in the same manner that CMS pays for allowable bad debt under original Medicare.

40. Therefore, United's underpayments to Vidant North include allowable bad debt for Enrollees both in standard United MA Plans **and** United D-SNPs.

**CMS Rules Further Clarify United's Obligations to Pay Vidant North.**

41. CMS regulations further eliminate any doubt that allowable bad debt is part of the total Medicare payment under original Medicare, making allowable bad debt part of United's responsibility to Out-Of-Network providers for United's MA Plans.

42. For example, the CMS rules that establish the prospective payment methodology for hospital inpatient services specifically enumerate the components that make up the total Medicare payment. At set forth in 42 C.F.R. § 412.110 (a rule titled "Total Medicare Payment"):

> **Medicare's total payment** for inpatient hospital services furnished to a Medicare beneficiary by a hospital **will equal the sum of payment listed in §§412.112 through 412.115**, reduced by the amount specified in §412.120.

Whether bad debt is part of Medicare's total payment therefore depends on whether it is part of the payments listed in §§412.112 through 412.115. Indeed, bad debt is included in 412.115(a):

> (a) *Bad debts*. An additional payment is made to each hospital in accordance with §413.89 of this chapter for bad debts attributable

---

[6] See North Carolina State Plan Under Title XIX of the Social Security Act, Attachments 4.19-A and 4.19-B.

9

306289627.1
Case 4:20-cv-00142-D  Document 1-1  Filed 07/22/20  Page 11 of 19

to deductible and coinsurance amounts related to covered services received by beneficiaries

43. Bad debt is not reduced by any amount specified in 42 C.F.R. §412.120.

44. Therefore, CMS has definitively established two principles that are determinative for this dispute: (i) allowable bad debts are part of Medicare's total payment under original Medicare; and (ii) MAO are required to reimburse Out-of-Network providers equal to the amount of Medicare's total payment under original Medicare.

45. United is accordingly obligated to reimburse Vidant North's allowable bad debts associated with providing Medicare covered services to United MA Plan Enrollees at the same rate that applies under original Medicare.

46. United has failed to do so. Indeed, United's position is that it has no obligation to ever reimburse Out-of-Network providers for allowable bad debt associated with United Enrollees.

47. As a result, United has underpaid Vidant North's claims for covered services provided to both standard MA Plan Enrollees and D-SNP Enrollees since at least October 2017.

48. United's improper underpayments to Vidant North for Medicare Advantage patients are continuing.

49. Vidant North has calculated those arrearages to be at least $802,490.

50. In addition to the arrearages referenced above, United owes Vidant North prompt pay law interest arrearages emanating from the foregoing underpayments, in accordance with 42 U.S.C. 1395w-27 and 42 CFR §422.520(a)(3) relating to the Medicare Advantage Program.

51. The parties have sought to resolve this dispute, to no avail.

# CAUSES OF ACTION

## COUNT #1

### (Declaratory Judgment)

52. Vidant North incorporates by reference all of the foregoing allegations as if set forth fully herein.

53. This is a count for declaratory relief pursuant to N.C. Gen. Stat. §1-253 and the Court's legal and equitable authority, and those laws pertaining to the Medicare Advantage Program, requiring United to reimburse Out-of-Network providers such as Vidant North at specific rates.

54. As a direct and proximate result of United's acts and omissions, including but not limited to United's failure to pay Vidant North the lawful amounts for its services, Vidant North has sustained, and will continue to sustain, damages and has been deprived, and will continue to be deprived, of the compensation to which Vidant North is entitled for its services rendered to Vidant North's Medicare Advantage patients.

55. The existence of another potentially adequate remedy does not preclude an award for declaratory relief.

56. Vidant North is entitled to declaratory relief, including a declaration that:

   (a) United's MAO Agreement with CMS and/or laws and guidance pertaining to the Medicare Advantage Program create a legal duty, requiring United to reimburse Vidant North at specific Medicate rates, inclusive of allowable bad debt; and

   (b) United thus owes Vidant North the difference between the amount United has paid Vidant North for services rendered to United's Medicare

11

Advantage patients and the amounts United is obligated to pay Vidant North for such patients and services, both historically and in the future.

## COUNT #2
## Breach of Fiduciary Duty

57. Vidant North incorporates by reference all of the foregoing allegations as if set forth fully herein.

58. Under the United MA Plans, Vidant North is a fiduciary of CMS under the Medicare program and entrusted with the obligation to pay the proper amounts for medically necessary services, covered services, or covered benefits as defined by United's MAO Agreement with CMS and / or Medicare Advantage laws and guidance.

59. United further owes Vidant North the following fiduciary duties: duty of care; duty of loyalty; duty to account; duty of full disclosure; duty to act fairly; and duty of good faith and fair dealing.

60. United breached and abused its fiduciary duties to Vidant North by failing to properly pay Vidant North for services rendered to United's MA Enrollees, both historically and in the future, arbitrarily and capriciously in order to maximize its profits, and without due regard to Vidant North's interests.

61. In that respect, United has breached and abused, and continues to breach and abuse, its following fiduciary duties: duty of care; duty of loyalty; duty to account; duty of full disclosure; duty to act fairly; and duty of good faith and fair dealing.

62. Vidant North has suffered, and continues to suffer, substantial damages because of United's violations of its fiduciary duties to Vidant North, including (but not limited to)

United's failure to properly pay Vidant North for services rendered to United's MA Enrollees, both historically and in the future.

## COUNT #3
## Breach of the Duty of Good Faith and Fair Dealing

63. Vidant North incorporates by reference all of the foregoing allegations as if set forth fully herein.

64. United's MAO Agreement with CMS and / or Medicare Advantage laws and guidance contain an implied duty of good faith and fair dealing with respect to providers such as Vidant North in providing Medicare Advantage services to United MA Enrollees.

65. United, as a fiduciary under its MAO Agreement with CMS, owed, and owes, Vidant North a duty of good faith and fair dealing with respect to the Medicare Advantage Program.

66. United breached its duty of good faith and fair dealing owed to Vidant in a number of ways, described more fully above, including United's failure to properly pay Vidant for services rendered to United's Medicare Advantage patients, both historically and in the future and under false pretenses.

67. United's actions in failing to properly pay Vidant North for services rendered to United's Medicare Advantage patients, both historically and in the future were, and continue to be, willful, wanton, and in conscious disregard of its duty to pay Vidant North the proper Medicare payments.

68. United's conduct in derogation of its duty of good faith and fair dealing under the Medicare Advantage Program has deprived Vidant North of its reasonable expectations and benefits under the Medicare Advantage Program.

13

## COUNT #4
## Unjust Enrichment / Quantum Meruit

69. Vidant North incorporates by reference all of the foregoing allegations as if set forth fully herein.

70. Vidant North has conferred upon United the benefit of providing valuable treatment to United MA Enrollees.

71. At the times Vidant North treated the United MA Enrollees, Vidant North reasonably expected remuneration from United at the rates required by United's MAO Agreement with CMS and laws and guidance pertaining to the Medicare Advantage program.

72. United consciously accepted the measurable benefit of the difference between the amounts that United paid—and continues to pay—Vidant North and the rates required by Vidant North's MAO Agreement with CMS and / or laws and guidance pertaining to the Medicare Advantage Program.

73. Vidant North's conferral of the benefit upon United was neither officious nor gratuitous.

74. By refusing to correctly pay Vidant North for the treatment that Vidant North provided to United MA Enrollees, United has been unjustly enriched.

75. As the result of United's unlawful, unjust, and wrongful acts, Vidant North suffered and continues to suffer damages, and Vidant North is owed restitution from United.

## COUNT #4
## Unjust Enrichment / Quantum Meruit

69. Vidant North incorporates by reference all of the foregoing allegations as if set forth fully herein.

70. Vidant North has conferred upon United the benefit of providing valuable treatment to United MA Enrollees.

71. At the times Vidant North treated the United MA Enrollees, Vidant North reasonably expected remuneration from United at the rates required by United's MAO Agreement with CMS and laws and guidance pertaining to the Medicare Advantage program.

72. United consciously accepted the measurable benefit of the difference between the amounts that United paid—and continues to pay—Vidant North and the rates required by Vidant North's MAO Agreement with CMS and / or laws and guidance pertaining to the Medicare Advantage Program.

73. Vidant North's conferral of the benefit upon United was neither officious nor gratuitous.

74. By refusing to correctly pay Vidant North for the treatment that Vidant North provided to United MA Enrollees, United has been unjustly enriched.

75. As the result of United's unlawful, unjust, and wrongful acts, Vidant North suffered and continues to suffer damages, and Vidant North is owed restitution from United.

14

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Vidant North demands judgment in its favor against United as follows:

A. Declaring that Vidant North is entitled to declaratory relief, including a declaration that:

    (1) United's MA Agreement with CMS and / or laws and guidance pertaining to the Medicare Advantage Program create a legal duty, requiring United to reimburse Vidant North at the full original Medicate rate, including allowable bad debt paid under original Medicare; and

    (2) United thus owes Vidant North the difference between the amount United has paid Vidant North for services rendered to United's MA Enrollees and the amounts United is obligated to pay Vidant North for such patients and services, both historically and in the future.

B. Declaring that United violated its fiduciary duties, and awarding injunctive, declaratory, and other equitable relief to ensure compliance with United's MAO Agreement with CMS and the Medicare Advantage Program;

C. Declaring that United violated and continues to violate United's MA Agreement with CMS and the Medicare Advantage Program and awarding injunctive, declaratory, and other equitable relief to ensure compliance with United's MAO Agreement with CMS and the Medicare Advantage Program;

D. Temporarily and permanently enjoining United from continuing to pursue their actions detailed herein and ordering United to pay Vidant North in accordance with United's MAO Agreement with CMS and with the Medicare Advantage Program;

E.  Awarding lost profits and compensatory damages in such amounts as the proofs at Trial shall show;

F.  Awarding restitution for reimbursements improperly withheld by United;

G.  Requiring United to pay Vidant North the amounts as required under United's MA Agreement with CMS and with the Medicare Advantage Laws;

H.  Awarding pre-judgment and post-judgment interest as provided by common law, statute or rule, or equity;

I.  These issues and Plaintiff's claims be tried by a jury; and

J.  Awarding all other relief to which Plaintiff Vidant North is entitled.

This the 12th day of June, 2020.

By: _____
Gary S. Qualls
N.C. State Bar No. 16798
Susan K. Hackney
N.C. State Bar No. 32252
Steven G. Pine
N.C. State Bar No. 44705
430 Davis Drive, Suite 400
Morrisville, NC 27560
Telephone: (919) 466-1182
Facsimile: (919) 516-2072

***Attorneys for Plaintiff
Vidant North Hospital***