IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:20-CV-142-D

| | | |
|---|---|---|
| HALIFAX REGIONAL MEDICAL CENTER, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **ORDER** |
| UNITEDHEALTHCARE OF NORTH CAROLINA, INC., and UNITEDHEALTHCARE, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

On June 15, 2020, Halifax Regional Medical Center, Inc. d/b/a Vidant North Hospital ("Vidant North") filed a complaint in Halifax County Superior Court against United Healthcare of North Carolina and UnitedHealthcare, Inc. (collectively, "United" or "defendants"). See [D.E. 1-1]. Vidant North seeks declaratory, injunctive, and monetary relief and alleges claims under North Carolina law for breach of fiduciary duty, breach of the duty of good faith and fair dealing, and unjust enrichment/quantum meruit. See id. ¶¶ 52–75. The claims concern money that Vidant North claims that United owes for services rendered. See id. ¶¶ 12–51. On July 22, 2020, United jointly and timely removed the action to this court under 28 U.S.C. § 1422(a)(1) [D.E. 1]. On July 29, 2020, United moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim [D.E. 8] and filed a brief in support [D.E. 9]. On September 8, 2020, Vidant North responded in opposition [D.E. 17]. That same day, Vidant North moved to remand the action to state court [D.E. 18], filed a memorandum in support [D.E. 18-1], and moved to stay consideration of United's motion to dismiss [D.E. 19]. On October 12, 2020, United replied to Vidant North's response to the motion

to dismiss [D.E. 22]. On October 19, 2020, United responded in opposition to Vidant North's motion to remand [D.E. 23] and motion to stay [D.E. 24]. As explained below, because United improperly removed this action under the federal officer removal statute (28 U.S.C. § 1422(a)(1)), the court grants Vidant North's motion to remand.

I.

Vidant North owns and operates a non-profit hospital in Roanoke Rapids, North Carolina. See Compl. [D.E. 1-1] ¶ 1. United provides health insurance, administration, and benefits to policyholders and plan participants pursuant to various healthcare benefit plans and insurance policies, including Medicare Advantage ("MA") plans. See id. ¶ 4.

The Medicare Act, 42 U.S.C. § 1395, et. seq., established federally-subsidized health insurance for the elderly and disabled. Medicare is administered through the Centers for Medicare and Medicaid Services ("CMS"). See Department of Health and Human Services—Centers for Medicare and Medicaid Services, 1 West's Fed. Admin. Prac. § 165 (Jul. 2020 ed.). Medicare Part A generally covers inpatient hospital care, skilled nursing facility care, nursing home care, hospice care, and home health care, and there is a fee-schedule amount for these services or supplies. See 42 U.S.C. § 1395c, et. seq. Medicare Part B generally covers services or supplies that are needed to diagnose or treat medical conditions or to prevent illness or detect it at an early stage, and there is a fee schedule amount for these services or supplies. See 42 U.S.C. § 1395j, et. seq. Medicare Part C generally allows Medicare beneficiaries to opt out of traditional Medicare coverage and instead obtain benefits through private insurers who contract with CMS to provide MA plans. See 42 U.S.C. § 1395w-21, et. seq.

Generally, Medicare Advantage Organizations ("MAO") contract with CMS. See 42 U.S.C. § 1395w-21; 42 C.F.R. § 422.503. CMS makes monthly pre-beneficiary payments to MAOs, which

serve Medicare beneficiaries. See 42 U.S.C. §§ 1395w-23, -25(b). MAOs may "select the [health care] providers from whom the benefits under the plan are provided." Id. § 1395w-22(d)(1). Thus, MAOs often contract with hospitals and physicians. Id. § 1395w-22(a)(2)(A). In order to cover all medicare benefits, MA plans often include services that non-contract providers furnish. See id.; 42 C.F.R. § 422-100(b). Payment to non-contract providers must be "equal to at least ... the total dollar amount of payment for such items and services as would otherwise be authorized under parts A and B." 42 U.S.C. § 1395w-22(a)(2)(A)(i)–(ii). Non-contract providers "must accept, as payment in full, the amounts that the[y] could collect if the beneficiary were enrolled in [Parts A and B]." 42 C.F.R. § 422-214(a)(1).

United contracts with CMS to serve as an MAO and offers various MA plans. See Compl. ¶ 13. Patients treated at Vidant North include Medicare beneficiaries who have enrolled in one of several United MA Plans. Id. ¶ 14. MAOs can enter into voluntary contracts with healthcare providers to establish negotiated terms and rates under which MAOs reimburse such "in-network" providers for covered healthcare services provided to enrollees. See id. ¶ 15. With respect to the claims at issue in this case, no contract existed between Vidant North and United. Rather, with respect to such claims, Vidant North was "out-of-network" under the United MA plans. See id.

"This action stems from a payment dispute between United and Vidant North as to the amount of payment Vidant North is entitled to an Out-of-Network provider under the Medicare program rules and/or United's MAO contract with CMS." Id. ¶ 17. "There is no dispute as to whether the services were covered by Medicare." Id. "[I]ndeed, United paid a portion of the claims at issue." Id. "The dispute is simply over the amount of payment that is owed to Vidant North for those claims." Id.

Under the Social Security Act and by the terms of their MAO contracts with CMS, MAOs

3

must reimburse out-of-network providers for allowable bad debt. See id. ¶¶ 18–24. Vidant North alleges that United failed to reimburse Vidant North for any of its allowable bad debt. See id. ¶¶ 25–26. "Since 2017, Vidant North has incurred $1,235,293 in allowable bad debt related to United MA enrollment." Id. ¶ 25. Vidant North also alleges that United underpaid Vidant North for covered services provided to dual eligible beneficiaries. See id. ¶¶ 27–47. Vidant North contends that these amounts are "at least $802,490." Id. ¶ 49. In this action, Vidant North seeks to recover the money that Vidant North claims United owes it. See id. ¶¶ 52–75.

II.

"[F]ederal courts, unlike most state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations." Strawn v. AT & T Mobility LLC, 530 F.3d 293, 296 (4th Cir. 2008); see Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Removal from state court is proper only if the federal district court has original jurisdiction over the removed action. See 28 U.S.C. § 1441(a); Lontz v. Tharp, 413 F.3d 435, 439 (4th Cir. 2005). If the federal court lacks subject-matter jurisdiction, it must remand the action to state court. See 28 U.S.C. § 1447(c).

The federal officer removal statute, 28 U.S.C. § 1442, provides:

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of revenue.

28 U.S.C. § 1442(a); see Mayor of Balt. v. B.P. P.L.C., 952 F.3d 452, 461–62 (4th Cir. 2020), cert.

4

granted, 141 S. Ct. 222 (2020); Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC, 865 F.3d 181, 186 (4th Cir. 2017); Sawyer v. Foster Wheeler LLC, 860 F.3d 249, 254 (4th Cir. 2017). Section 1442 protects officers and agents of the federal government from state courts that may be hostile to federal agents, federal law, or the actions of enforcing federal law. See Watson v. Philip Morris Cos., 551 U.S. 142, 150 (2009); Willingham v. Morgan, 395 U.S. 402, 406–07 (1969); Maryland v. Soper, 270 U.S. 9, 32 (1926); Mayor of Balt., 952 F.3d at 461; Sawyer, 860 F.3d at 254. Additionally, section can 1442 provide "a federal forum for a federal defense," particularly an official immunity defense. Ripley v. Foster Wheeler LLC, 841 F.3d 207, 210 (4th Cir. 2016); see Watson, 551 U.S. at 150–51; Willingham, 395 U.S. at 406–07; Mayor of Balt., 952 F.3d at 461; Sawyer, 860 F.3d at 254.

A private defendant in a state court action may seek removal under section 1442. See, e.g., Watson, 551 U.S. at 147; Mayor of Balt., 952 F.3d at 461–62; Sawyer, 860 F.3d at 254. The private defendant must show: "(1) that it acted under a federal officer; (2) that it has a colorable federal defense; and (3) that the charged conduct was carried out for or in relation to the asserted official authority." Sawyer, 860 F.3d at 254 (citations and quotations omitted); see Watson, 551 U.S. at 151–52; Jefferson Cnty. v. Acker, 527 U.S. 423, 431 (1999); Mesa v. California, 489 U.S. 121, 128–29 (1989); Willingham, 395 U.S. at 406–07; Davis v. South Carolina, 107 U.S. 597, 600–01 (1883); Mayor of Balt., 952 F.3d at 461; Northrop Grumman, 865 F.3d at 186; Ripley, 841 F.3d at 209–10. Courts must construe section 1442 "to give full effect to the purposes" for which Congress enacted it. Colorado v. Symes, 286 U.S. 510, 517 (1932). However, section 1442's "broad language is not limitless." Watson, 551 U.S. at 147; Mayor of Balt., 952 F.3d at 462–71. Whether a party properly removed an action under section 1442 is a "mixed question of law and fact." Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 89 (1991).

5

In Watson, the Court addressed the limits of section 1442 concerning a private party "acting under" a federal officer. See Watson, 551 U.S. at 145. There, two individual plaintiffs sued a tobacco company for unfair and deceptive business dealings based on the tobacco company's claim that its cigarettes are "light." See id. at 146. The tobacco company removed the action to federal court under section 1442, and the district court declined to remand. See id. In declining to remand, the district court held that, because the tobacco company followed a government agency-imposed method of testing its cigarettes, the company was "acting under" a government agency. See id. The district court then certified the question of whether the tobacco company was "acting under" a government agency to the United States Court of Appeals for the Eighth Circuit which answered in the affirmative. See id. at 147. In addition to the reasons that the district court cited, the Eighth Circuit also cited the government agency's "detailed supervision" of testing cigarettes. See id. The Eighth Circuit then compared the factual circumstances facing the tobacco company to cases where courts construed section 1442 to permit government contractors "heavily supervised" by government agencies to remove actions under section 1442. Id.

The Supreme Court reversed. See id. The Court recognized that "the words 'acting under' are broad," but subject to limits found in the "text's language, context, history, and purposes." Id. Although Congress revised section 1442 on numerous occasions, the revisions did not affect the scope of the phrase "acting under." See id. at 147–49. The Court's precedents recognize removal for private individuals "who lawfully assist the federal officer in the performance of his official duty," or "if [the private individual] w[as] authorized to act with or for federal officers or agents in affirmatively executing duties under federal law." Id. at 151 (alteration and quotations omitted); see City of Greenwood v. Peacock, 384 U.S. 808, 824 (1966); Davis, 107 U.S. at 600. As for section 1442's text, the word "under . . . involves acting in a certain capacity, considered in relation to one

6

holding a superior position or office." Watson, 551 U.S. at 151 (quotation omitted). "Acting under" a federal officer "typically involves subjection, guidance, or control" and "an effort to assist, or to help carry out, the duties or tasks of the federal superior." Id. at 151–52 (alteration, emphasis, and quotation omitted). A private individual's mere compliance with a federal law, rule, or regulation is insufficient under section 1442. See id. at 152; Mayor of Balt., 952 F.3d at 462.

In Watson, the Court held that the cigarette company did not "act under" a government agency when the tobacco company complied with cigarette-related regulations. See Watson, 551 U.S. at 145. Detailed regulatory schemes, without more, only require compliance with the law, not action under a federal officer. See id. at 153. The cigarette company lacked a contractual, monetary, employment, or agency relationship with the government. See id. at 153–57. The cigarette company also lacked a "special relationship" to the government where the government agency delegated its authority to the cigarette company. See id.; cf. Isaacson v. Dow Chemical, 517 F.3d 129, 137 (2d Cir. 2008).

In Isaacson, the United States Court of Appeals for the Second Circuit analyzed Watson and held that a "special relationship" existed when a defense contractor contracted with the government to produce a product (i.e., Agent Orange), the contract delegated authority from the government to the defense contractor, the defense contractor complied with the government contract, and the government would have had to produce the product on its own absent the defense contractor's efforts. See Isaacson, 517 F.3d at 137; cf. Watson, 551 U.S. at 153–54; Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 399 (5th Cir. 1998). The Fourth Circuit and other circuits follow the principles in Isaacson. See Mayor of Balt., 952 F.3d at 462–63; Sawyer, 860 F.3d at 255; Hurley v. CBS Corp., 648 F. App'x 299, 303–04 (4th Cir. 2016) (per curiam) (unpublished); see also Ruppel v. CBS Corp., 701 F.3d 1176, 1181 (7th Cir. 2012); Bennett v. MIS Corp, 607 F.3d 1076,

7

1088 (6th Cir. 2010); Genereux v. Am. Beryllia Corp., 577 F.3d 350, 357 n.9 (1st Cir. 2009).

Courts disagree about whether MAOs "act under" CMS for purposes of section 1442. The United States Court of Appeals for the Sixth Circuit is the only federal circuit court to address the issue and held that MAOs do not act under CMS for purposes of section 1442. See Ohio State Chiropractic Ass'n v. Humana Health Plan Inc., 647 F. App'x 619, 622–23 (6th Cir. 2016) (unpublished). The Sixth Circuit reasoned that CMS does not delegate legal authority to MAOs or authorize MAOs to act on its behalf. See id. at 622–23. Moreover, MAOs are not "closely supervised or controlled by CMS," as evidenced by "their autonomy to utilize innovations of the private market." Id. at 623 (alteration and quotations omitted). Furthermore, MAOs do not "perform a job that the government would have to perform itself if it did not contract with private firms[.]" Id. at 623–24. "If no health insurer chose to contract with CMS as an MAO, it is doubtful that the government would get into the business of offering its own MA plans . . . . [I]t would fall back on traditional-fee-for service Medicare—which it must provide regardless." Id. at 624. The fact that an MAO is a government contractor does not mean it automatically gains federal officer removal jurisdiction. See id. Several district courts have followed the reasoning of Ohio State Chiropractic. See Wise v. United Healthcare of Fla., Inc., 387 F. Supp. 3d 1382, 1386–87 (M.D. Fla. 2019); Shalaby v. Heritage Physician Network, 364 F. Supp. 3d 693, 697 (S.D. Tex. 2019); Premier Inpatient Partners, LLC v. Aetna Health & Life Ins. Co., 362 F. Supp. 3d 1217, 1225 (M.D. Fla. 2019); Assael v. Preferred Healthcare Partners, Inc., No. 0:17-cv-62584-KMM, 2018 WL 6529530, at *4–6 (S.D. Fla. Feb. 23, 2018) (unpublished); Morrison v. Humana, Inc., No. 3:16-CV-00598-GNS, 2017 WL 2312476, at *3 (W.D. Ky. May 26, 2017) (unpublished).

In contrast, several district courts have held that MAOs act under CMS for purposes of section 1442. In particular, the United States District Court for the Northern District of West

8

Virginia declined to follow Ohio State Chiropractic and held that the Sixth Circuit construed "acting under" too narrowly. See Body & Mind Acupuncture v. Humana Health Plan, Inc., No. 1:16CV211, 2017 WL 653270, at *5 (N.D. W. Va. Feb. 16, 2017) (unpublished). In framing the "acting under" and "causal nexus" issues, the Body & Mind Acupuncture court noted that the Fourth Circuit has articulated these requirements as distinct elements. See id. at *4 (citing Ripley, 841 F.3d at 209–10). However, the Body & Mind Acupuncture court then cited a Second Circuit case that pre-dated the Supreme Court's 2009 decision in Watson and stated that the "acting under" and "causal nexus" requirements "tend to merge into a single inquiry: that is whether 'the acts that form the basis for the state . . . suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." Id. (quoting In re Methyl Teriary Butyl Ether Prods. Liab. Litig., 488 F.3d 112, 124 (2d Cir. 2007) (quotation omitted)). The Body & Mind Acupuncture court then discussed Watson. See id. at *5. The Body & Mind Acupuncture court noted that MAOs "help CMS fulfill a basic government task" by "administer[ing] Medicare benefits through the private market." Id. (alterations and quotations omitted). Otherwise, CMS would have "to administer Medicare benefits through Parts A and B." Id. The Body & Mind Acupuncture court concluded that an MAO's activities "involve an effort to assist, or to help carry out, the duties or tasks of the federal superior in a manner much more significant than simply complying with the law to which it is subject." Id. (emphasis and quotations omitted). As such, "this responsibility is more akin to a delegation of CMS administrative obligations than a regulation of otherwise private insurance." Id. According to the Body & Mind Acupuncture court, "the detailed regulations governing MAOs . . . further underscore that MAOs are under CMS's 'subjection, guidance, and control.'" Id. Several district courts have adopted the reasoning in Body & Mind Acupuncture. See MHA, LLC v. Amerigroup Corp., No. 2:18-cv-16042 (KM)(JAD), 2021 WL 226110, at *5–7 (D.N.J. Jan. 21, 2021)

9

(unpublished); Escarga v. Verdugo Vista Operating Co., No. CV 19-9478-GW-FFMx, 2020 WL 1703181, at *6–7 (C.D. Cal. Apr. 8, 2020) (unpublished); Baptist Hosp. of Miami, Inc. v. Medica Healthcare Plans, Inc., No. 18-CV-25460-UU, 2019 WL 1915386, at *2 (S.D. Fla. Mar. 21, 2019) (unpublished); Gordy v. CareMore Health Plan, No. SACV 19-00048JVS (JDEx), 2019 WL 1237421, at *3 (C.D. Cal. Mar. 18, 2019) (unpublished); Hepstall v. Humana Health Plan, Inc., No. 18-0163-CG-MU, 2018 WL 4677871, at *2–5 (S.D. Ala. July 3, 2018) (unpublished) report and recommendation adopted by 2018 WL 492767, at *1 (S.D. Ala. Oct. 9, 2018) (unpublished); Inchauspe v. Scan Health Plan, No. 2:17 CV-06011-CAS (JCx), 2018 WL 566790, at *5 (C.D. Cal. Jan. 23, 2018) (unpublished); accord Beaumont Foot Specialists, Inc. v. United Healthcare of Tex., Inc., No. 1:15-cv-216, 2015 WL 9257026, at *4–5 (E.D. Tex. Dec. 14, 2015) (unpublished); Assocs. Rehab. Recovery, Inc. v. Humana Med. Plan, Inc., 76 F. Supp. 3d 1388, 1391 (S.D. Fla. 2014); Einhorn v. CarePlus Health Plans, Inc., 43 F. Supp. 3d 1268, 1270 (S.D. Fla. 2014).

Vidant North contends that this court lacks jurisdiction under section 1442 because United did not "act under" the direction of a federal officer (i.e., CMS). See [D.E. 18-1] 5–8. In support, Vidant North correctly notes that United does not act under a federal officer simply by being a government contractor. See id. at 6; Watson, 551 U.S. at 151. Rather, in the context of government contractor, "the relationship between the contractor and the Government [must be] an unusually close one involving detailed regulation, monitoring, or supervision." Watson, 551 U.S. at 153. Moreover, in Watson, the Court expressly declined to address "whether and when particular circumstances may enable private contractors to invoke [section 1442]." Id. at 154. Vidant North also cites Ohio State Chiropractic and argues that United's delegated authority did not rise to the

10

necessary level of control to "act under" the direction of CMS. See id. at 7–8.[1]

In response, United contends that section 1442 provides federal jurisdiction. See [D.E. 23] 3–13. Citing Body & Mind Acupuncture, United argues that MAOs act under CMS's "subjection, guidance, and control in administering MA plans." Id. at 6. United also argues that the Sixth Circuit wrongly decided Ohio State Chiropractic. See id. at 7–9.

The court has reviewed the relevant cases, statutes, and regulations. The Sixth Circuit's analysis in Ohio State Chiropractic is more persuasive that the analysis in Body & Mind Acupuncture. Thus, the court concludes that United did not act under CMS for purposes of section 1442. Moreover, the court also agrees with those courts that have analyzed section 1442 and distinguished between "payment dispute" cases and "coverage dispute" cases. Compare Baptist Hosp., 2019 WL 1915386, at *2 with Assocs. Rehab. Recovery, 76 F. Supp. 3d at 1390; Einhorn, 43 F. Supp. 3d at 1270. "In payment dispute cases, the parties agree that there is Medicare coverage, but disagree as to the reimbursement rate. In coverage dispute cases, the parties disagree about whether Medicare provides coverage at all." Baptist Hosp., 2019 WL 1915386, at *2. "Payment disputes are simple state-law contract disputes, but coverage disputes invoke the Federal Officer Statute because in determining whether Medicare provides coverage, the MAO is interpreting and applying the Medicare rules and regulations pursuant to authority delegated to it by CMS." Id. Vidant North's dispute with United is a payment dispute, not a coverage dispute. See Compl. ¶ 17; see also id. ¶¶ 12–75.

---

[1] Vidant North cites several other cases in support, but they are distinguishable. For example, Cabalce v. Thomas E. Blanchard & Assocs., Inc., 797 F.3d 720 (9th Cir. 2015), does not concern Medicare. Moreover, although Zanecki v. Health All. Plan of Detroit, 577 F. App'x 394, 397–98 (6th Cir. 2014) (unpublished), concerns MAOs, Zanecki is distinguishable because there the Sixth Circuit examined whether an MAO was an agent or instrument for purposes of vicarious liability under the Federal Tort Claims Act.

11

III.

In sum, court GRANTS plaintiff's motion to remand [D.E. 18] and REMANDS this action to Halifax County Superior Court. Defendants' motion to dismiss remains pending, and the Halifax Superior Court can address that motion on remand.

SO ORDERED. This 16 day of February 2021.

JAMES C DEVER III
United States District Judge